UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Jian Yi CHENG, et al., <br>     Plaintiffs, <br><br> v. <br><br> ANTONY BLINKEN, U.S. Secretary of State, et al., <br>     Defendants. | Civil Action No. 23-02602 (JDB) |

## MEMORANDUM OPINION

Plaintiffs Jian Yi Cheng, Xing Cheng, Hourasa Seirafitehranian, Parmida Saghafi, Amir Saghafi, Eisa Rigi, Master Thattheb Rigi, Emran Rigi, and La Or Putmata bring this action under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., to compel certain government officials and agencies to adjudicate three Employment-Based Immigration: Third Preference ("EB-3") visa applications. Plaintiffs also claim that one federal regulation related to the Department of State's adjudication of immigrant visa petitions is unlawful and should be set aside under the APA.

Three plaintiffs, including Cheng, are citizens, nationals, and residents of foreign countries and the beneficiaries of approved Form I-140 petitions, which classify them as alien workers pursuant to 8 U.S.C. § 1153(b)(3)(A)(iii). The remaining plaintiffs are relatives of those three and are thereby derivative beneficiaries.[1] The defendants are the Department of State and four Department of State officials in their official capacities, including Secretary of State Antony

---

[1] If the visa applicant's Form I-140 is approved, then the applicant's spouse and unmarried children younger than 21 years old may also be eligible for admission into the United States as derivative applicants. See Employment-Based Immigration: Third Preference EB-3, USCIS, https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-third-preference-eb-3 (last visited Sept. 30, 2024) [hereinafter USCIS EB-3].

1

Blinken (collectively "State Department"); and the Department of Homeland Security's ("DHS") U.S. Citizenship and Immigration Services ("USCIS").[2]

Before the Court is the government's motion to dismiss the complaint. For the reasons that follow, the Court will grant the motion and dismiss plaintiffs' claims.

## Background

### I.   EB-3 Immigrant Visa Legal Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., prescribes the processes by which non-citizens apply for visas to enter the United States. See id. The visa category at issue in this case is the EB-3, which is an employment-based immigration visa for "Skilled workers," "Professionals," and "other workers." USCIS EB-3; see also 8 U.S.C. § 1153(b)(3).

There are multiple steps for an applicant to apply for and ultimately obtain an EB-3 visa. See generally 8 U.S.C. §§ 1201–02; 22 C.F.R. §§ 42.61–42.81 (2024). The steps relevant to this case are as follows. The prospective U.S. employer or the noncitizen visa applicant must first file a Form I-140, Immigrant Petition for Alien Worker, with USCIS, which USCIS uses to confirm that the noncitizen applicant has the employment necessary to qualify for his intended visa category. See 8 U.S.C. §§ 1154(a)(1)(E), (F); see also 8 C.F.R. § 204.5(a), (c). USCIS investigates and if the applicant demonstrates eligibility, then USCIS approves the petition. See 8 U.S.C. § 1154(b); 8 C.F.R. § 204.5(g)–(n). If USCIS approves the petition, then the applicant is placed in a queue to submit a visa application, subject to the INA's numerical limitations on the numbers of each type of employment visa available each year. See 8 U.S.C. §§ 1151(d), 1152, 1153(b).

---

[2] Where there is no need to distinguish between the State Department and USCIS, the Court refers to all defendants collectively as "the government."

If the INA's numerical limitations permit the applicant to submit a visa application and the applicant is located outside of the United States, USCIS then sends the approved Form I-140 to the State Department's National Visa Center ("NVC") for pre-processing. See 8 C.F.R. § 204.5(n)(1). The NVC notifies the applicant of its receipt of the applicant's petition and the requirements to submit certain documentation and application fees. See 22 C.F.R. §§ 42.63(a)(1), (c), 42.71(b); Step 2: Begin National Visa Center (NVC) Processing, Travel.State.Gov, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html (last visited Sept. 30, 2024) [hereinafter Visa Process Step 2]. Once the NVC confirms that it has received all required materials from the applicant and the respective U.S. embassy or consulate has availability, the NVC schedules the applicant for an interview with a consular officer. See Step 11: Applicant Interview, Travel.State.Gov, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-10-prepare-for-the-interview/step-11-applicant-interview.html (last visited Sept. 30, 2024); 9 FAM 504.4-6a; 22 C.F.R. § 42.62. Consular officers must review and adjudicate all immigrant visa applications, see 8 U.S.C. § 1202(b), and the State Department then issues visas to eligible applicants, see Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 335 (D.C. Cir. 2023) (citing 22 C.F.R. §§ 42.41–.42, 42.51).

The State Department's review of USCIS-approved visa petitions is not a rubber stamp. USCIS's approval of an applicant's Form I-140 "does not relieve the alien of the burden of establishing to the satisfaction of the consular officer that the alien is eligible" for the visa. 22 C.F.R. § 42.41. Additionally, a consular officer must "suspend action in a petition case and return the petition, with a report of the facts, for reconsideration by DHS if . . . the officer knows or has reason to believe that approval of the petition was obtained by fraud, misrepresentation, or other

unlawful means, or that the beneficiary is not entitled, for some other reason, to the status approved." Id. § 42.43(a).

## II. Factual and Procedural Background

The following facts are drawn from the complaint and matters of which the court may take judicial notice. See Gun Owners of Am., Inc. v. FBI, 594 F. Supp. 3d 37, 42 (D.D.C. 2022). Jian Yi Cheng is a citizen, national, and resident of the People's Republic of China, and the beneficiary of a Form I-140; her husband is derivative beneficiary Xing Cheng. Compl. [ECF No. 1] ¶ 3–4. On February 18, 2017, USCIS approved a Form I-140 petition to classify her as a worker pursuant to 8 U.S.C. § 1153(b)(3)(A)(iii).[3] Compl. ¶ 16. By not later than March 16, 2017, the State Department had received notification of the approval. Id. ¶ 17. On or before November 9, 2017, the State Department returned the petition to USCIS for reconsideration, asserting the consular officer had "reason to believe that approval of the petition was obtained by fraud, misrepresentation, or other unlawful means, or that Jian Yi Cheng was not entitled, for some other reason, to the status approved." Id. ¶ 20. On November 7, 2023, USCIS reapproved Cheng's petition. See Notice of Reaffirmation (Jian Yi Cheng) [ECF No. 4-1] ("Cheng Reaffirmation") at 1; see also Pls.' Mem. of P. & A. in Opp'n to Defs.' Mot. to Dismiss [ECF No. 6] ("Opp'n") at 7 (not disputing that USCIS reaffirmed the three Form I-140 petitions at issue after the filing of the complaint).

---

[3] The Complaint states that Cheng, Seirafitehranian, and Rigi have immigrant visa petitions that classify them as workers pursuant to "8 U.S.C. § 1153(b)(3)(A)(iii)(B)." See Compl. ¶¶ 3, 5, 7. That subsection of § 1153 does not exist. The Court assumes that plaintiffs' petitions categorize them as "other workers" pursuant to § 1153(b)(3)(A)(iii). See also Notice of Reaffirmation (Jian Yi Cheng) [ECF No. 4-1] at 1; Notice of Reaffirmation (Eisa Rigi) [ECF No. 4-2] at 1; Notice of Reaffirmation (Hourasa Seirafitehranian) [ECF No. 4-3] at 1 (all stating that plaintiffs' petitions seek to categorize them as "Other Workers in accordance with Section 203(b)(3)(A)(iii)" of the INA).

Hourasa Seirafitehranian[4] is a citizen, national, and resident of Canada and the beneficiary of a Form I-140 petition; her immediate relatives, Parmida Saghafi and Amir Saghafi, are derivative beneficiaries.[5]  Compl. ¶ 5–6.  On April 25, 2017, USCIS approved a Form I-140 petition to classify Seirafitehranian as a worker pursuant to 8 U.S.C. § 1153(b)(3)(A)(iii).  Id. ¶ 23.  By not later than July 27, 2017, the State Department had received notification of the approval.  Id. ¶ 24.  On or before November 29, 2017, the State Department returned the petition to USCIS for reconsideration, asserting the consular officer had "reason to believe that approval of the petition was obtained by fraud, misrepresentation, or other unlawful means, or that Hourasa Seirafitehranian was not entitled, for some other reason, to the status approved."  Id. ¶¶ 25–26.  On October 27, 2023, USCIS reapproved the petition.  See Notice of Reaffirmation (Hourasa Seirafitehranian) [ECF No. 4-3] ("Seirafitehranian Reaffirmation") at 1; see also Opp'n at 7.

Eisa Rigi[6] is a citizen, national, and resident of Iran and the beneficiary of a Form I-140 petition; her immediate relatives, Master Thattheb Rigi, Emran Rigi, and La Or Putmata, are derivative beneficiaries.[7]  Compl. ¶ 7–8.  On March 31, 2017, USCIS approved a Form I-140 petition to classify Rigi as a worker pursuant to 8 U.S.C. § 1153(b)(3)(A)(iii).  Id. ¶ 29.  By not later than May 10, 2017, the State Department had received notification of the approval.  Id. ¶ 31.  On or before November 9, 2017, the State Department returned the petition to USCIS for

---

[4] Plaintiff Hourasa Seirafitehranian's name is spelled inconsistently throughout the complaint.  Compare, e.g., Compl. ¶ 5, with id. ¶ 23.  The Court uses the spelling from the case caption.

[5] Plaintiffs do not explain Parmida Saghafi and Amir Saghafi's relationship to Hourasa Seirafitehranian.  See Compl. ¶ 6.  Because at the motion to dismiss stage the Court views the facts in the light most favorable to plaintiffs, see Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91 (D.D.C. 2020), the Court will assume for the purpose of this opinion that both individuals are proper derivative beneficiaries of Seirafitehranian's Form I-140 petition.

[6] Plaintiff Eisa Rigi's name is spelled inconsistently throughout the complaint.  Compare Compl. ¶ 7, with id. ¶ 8.  The Court uses the spelling from the case caption.

[7] Plaintiffs do not explain Master Thattheb Rigi, Emran Rigi, and La Or Putmata's relationships to Eisa Rigi.  See Compl. ¶ 8; cf. id. ¶ 52 (noting Rigi has two children).  Again, the Court will assume for the purpose of this opinion that all three individuals are proper derivative beneficiaries of Rigi's Form I-140 petition.

reconsideration. See id. ¶ 32. On October 27, 2023, USCIS reapproved the petition. See Notice of Reaffirmation (Eisa Rigi) [ECF No. 4-2] ("Rigi Reaffirmation") at 1; see also Opp'n at 7.

On September 7, 2023, plaintiffs filed the present complaint asserting that USCIS and the State Department have unreasonably delayed action on their Form I-140 petitions and visa applications, and challenging the lawfulness of 22 C.F.R. § 42.43(a)—the regulation that permits consular officers to return visa petitions to USCIS for reconsideration. See Compl. ¶¶ 59, 65. Plaintiffs first allege that USCIS violated the APA, which requires an administrative agency to decide a matter presented to it "within a reasonable time." See 5 U.S.C. § 555(b); Compl. ¶¶ 36–59. Plaintiffs seek a court order to "compel USCIS to reaffirm or reconsider" the petitions and, if reaffirmed, to return them to the State Department pursuant to Section 706 of the APA, which authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." See Compl. ¶ 59 (quoting 5 U.S.C. § 706(1)).

Plaintiffs next allege that the State Department has not permitted them to file visa applications. Plaintiffs request a court order compelling the State Department "to provide plaintiffs . . . with an opportunity to apply . . . for an immigrant visa," id. ¶ 71, and "to adjudicate" their applications, id. ¶ 95; see generally id. ¶¶ 66–95.

Plaintiffs finally contend that the regulation at 22 C.F.R. § 42.43(a), which requires a consular officer to send a visa immigration petition back to the DHS for reconsideration in certain situations, is unlawful insofar as it "purports to relieve consular officers from their statutory duty to adjudicate immigrant visa petitions." Id. ¶ 64. Plaintiffs request that the Court hold the regulation unlawful and set it aside under Section 706 of the APA, which authorizes the Court to set aside agency action "not in accordance with law." 5 U.S.C. § 706(2)(A); see Compl. ¶ 65.

The government moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See Defs.' Mot. to Dismiss & Mem. in Supp. Thereof [ECF No. 4] ("Mot.")

6

at 1.  Plaintiffs filed a memorandum in opposition.  See Opp'n.  The government filed a reply.  See Reply in Further Supp. of Defs.' Mot. to Dismiss [ECF No. 7] ("Reply").  The motion is now ripe for decision.

## Legal Standards

"When reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court 'assumes the truth of all material factual allegations in the complaint and construes the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91 (D.D.C. 2020) (cleaned up) (quoting Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011)).  "The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence."  Didban v. Pompeo, 435 F. Supp. 3d 168, 173 (D.D.C. 2020) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  At the motion to dismiss stage, courts must "accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor," Sanchez v. Off. of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022), but the Court need not credit "legal conclusions couched as factual allegations," Nurriddin v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016) (per curiam).

## Analysis

The government raises both jurisdictional and merits arguments in its motion to dismiss.  Jurisdictionally, the government contends that (1) certain defendants are not proper parties to this case, (2) plaintiffs' APA and mandamus claims against USCIS are moot, and (3) plaintiffs' APA

and mandamus claims against the State Department are not ripe. See Mot. at 4–6; Reply at 7–8. On the merits, the government contends that plaintiffs' claims against the State Department fail, because (1) as to the mandamus claim, neither the State Department nor consular officers have a non-discretionary duty to adjudicate a particular visa application, and (2) as to the APA claim, plaintiffs failed to plead a plausible claim for unreasonable delay under this Circuit's test in Telecommunications Research and Action Center v. Federal Communications Commission, ("TRAC") 750 F.2d 70 (D.C. Cir. 1984). See Mot. at 6–25.

## I. Jurisdictional Arguments

### A. Propriety of Named Parties

The government contends that Secretary Blinken and the State Department are not proper defendants in this case because neither party can favorably adjudicate a visa application.[8] See Mot. at 5. The government's argument rests heavily on the D.C. Circuit's opinion in Baan Rao Thai Restaurant v. Pompeo, 985 F.3d 1020 (D.C. Cir. 2021). See Mot. at 5–6. In that case, the D.C. Circuit stated that the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" Baan Rao, 985 F.3d at 1024 (quoting Saavedra Bruno v. Albright, 197 F.3d 1153, 1156 (D.C. Cir. 1999)). Based on this language, the government argues that U.S. consulates have exclusive authority to compel action on plaintiffs' visa applications, and thus the Court should dismiss the State Department and Secretary Blinken. Mot. at 6.

The Court disagrees. This Court has previously concluded that the Secretary of State is a proper defendant in visa mandamus cases, and the reasoning from those cases applies here. See, e.g., Baygan v. Blinken, Civ. A. No. 23-2840 (JDB), 2024 WL 3723714, at *3 (D.D.C. Aug. 8,

---

[8] As in past cases, "the Court understands this to be a Rule 12(b)(1) argument that these defendants cannot redress plaintiffs' alleged injury." See Tahavori v. Blinken, Civ. A. No. 23-1460 (JDB), 2024 WL 1328546, at *3 n.1 (D.D.C. Mar. 28, 2024).

2024); Tahavori v. Blinken, Civ. A. No. 23-1460 (JDB), 2024 WL 1328546, at *3 (D.D.C. Mar. 28, 2024). The government frames plaintiffs' complaint as one about visa adjudications. See Mot at 5. But plaintiffs' complaint is not about the substance of an adjudication. Rather, plaintiffs challenge the government's alleged unreasonable delay—or the timing—of their visa determinations. See Compl. ¶¶ 78–79, 87–88, 90. And as this Court stated in Baygan, "control over visa determinations is distinguishable from control over the timing of visa determinations." Id. 2024 WL 3723714, at *3. "Nothing in Baan Rao precludes senior State Department officials from directing consular officers to adjudicate applications within a reasonable time." Id. (internal quotation marks omitted); see id. (collecting cases). Hence, the Court will deny the government's motion to dismiss Secretary Blinken and the State Department as parties.

### B. Mootness of Claims Against USCIS

The government also contends that the Court should dismiss the claims against USCIS as moot. Mot. at 4–5. The government submits evidence that after plaintiffs filed their complaint, USCIS reapproved the three Form I-140s and forwarded them to the State Department. See id. at 2–5; see also Cheng Reaffirmation at 1; Rigi Reaffirmation at 1; Seirafitehranian Reaffirmation at 1. Plaintiffs agree that USCIS has reaffirmed the petitions—granting the only remedy that plaintiffs sought from USCIS—and that their mandamus claims against USCIS are moot. See Opp'n at 1, 7; Compl. ¶ 59.

Plaintiffs have received the reconsideration that they sought from USCIS. Because events occurred during the pendency of the case "that make[] it impossible for the court to grant 'any effectual relief'" to plaintiffs on these claims, the Court agrees that the claims are moot. See Da Costa, 80 F.4th at 340 (quoting United States v. China Telecom (Ams.) Corp., 55 F.4th 939, 943 (D.C. Cir. 2022)). The Court will therefore dismiss Count I against USCIS for a lack of subject matter jurisdiction.

9

### C. Ripeness of Claims against the State Department

The government contends for the first time in its reply that plaintiffs' claims of unreasonable delay are not ripe. See Reply at 6–8. Although it is a "basic precept that arguments generally are forfeited if raised for the first time in reply," Twin Rivers Paper Co. v. SEC, 934 F.3d 607, 615 (D.C. Cir. 2019), "[a]rguments relating to subject-matter jurisdiction can be raised at any time," Robinson v. Ergo Sols., LLC, Civ. A. No. 12-147 (JDB), 2014 WL 12788937, at *3 (D.D.C. Feb. 12, 2014) (citing Fed. R. Civ. P. 12(h)(3)).

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998). The government contends that plaintiffs "have not submitted all required fees and documentation necessary for their cases to be found documentarily qualified" by NVC and for an interview. Reply at 7. And prior to an interview, the State Department does not consider an individual to have a "visa application." See id. Therefore, the government argues that plaintiffs' requests for relief requiring the State Department to accept and adjudicate non-existent visa applications are not ripe.

The Court concludes that plaintiffs' Count III claim of unreasonable delay is ripe.[9] First, plaintiffs seek the "opportunity to apply . . . for an immigrant visa." See Compl. ¶ 71 (emphasis added). To complete the application process for an immigrant visa, federal regulations and the State Department visa processing website indicate that the NVC or consular officers will reach out to applicants to solicit the required documentation and application fees. For example, the regulations state that applicants "must pay the fee upon being notified that a visa is expected to become available in the near future, and upon being requested to obtain the supporting documentation needed to apply formally for a visa." 22 C.F.R. § 42.71(b) (emphases added).

---

[9] Counts III and IV of the complaint are erroneously numbered as Counts IV and V. See Compl. at 14–15.

10

Similarly, the State Department's website explaining the visa application process states that once the NVC receives an approved petition from USCIS, the NVC will send the applicant a "Welcome Letter," and "[w]ith the information in this letter," the applicant can log into the State Department consular portal, which has tools to check the status of and manage his case and receive messages. See Visa Process Step 2.

At this stage, the Court must "construe[] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." Bagherian, 442 F. Supp. 3d at 91 (quoting Am. Nat'l Ins. Co., 642 F.3d at 1139). The Court construes plaintiffs' claim as the following: the State Department has unreasonably delayed the processing of their visa applications by not notifying plaintiffs that they are eligible to file the documentation and pay the application fee required to continue the creation and processing of their applications. The federal regulations and State Department's listed procedures indicate that applicants are not required (and perhaps are unable) to submit additional documentation or pay a visa processing fee until the State Department notifies them to do so. See 22 C.F.R. § 42.71(b); see also Visa Process Step 2. Here, there is a plausible inference that the State Department has not yet notified plaintiffs that they may complete these next steps. Hence, the Court concludes that plaintiffs' Count III claim of unreasonable delay is ripe.

The Court agrees with the government, however, that plaintiffs' unreasonable delay claim in Count IV is not ripe because plaintiffs' claim is premature. Plaintiffs' Counts III claim alleges unreasonable delays in the acceptance and processing of their visa applications, whereas Count IV alleges an unreasonable delay in the adjudication of the applications. Compare Compl. ¶ 71; with id. ¶ 95 (emphasis added). Accordingly, the mandamus relief that plaintiffs seek is layered—to order the government to adjudicate plaintiffs' visa applications, the government must first provide plaintiffs the opportunity to submit those applications. Even if the delay in submitting the visa

11

applications is attributable to the State Department, the State Department still has no ability to adjudicate the non-existent applications at this time. The Court does not know when the State Department will receive plaintiffs' completed visa applications, let alone adjudicate them. There is no live case or controversy about whether the future period of adjudication is reasonable, and the claim is therefore not ripe. See, e.g., Beltran v. Miller, 699 F. Supp. 3d 785, 794–95 (D. Neb. 2023) (concluding claim of an unreasonable delay in the State Department's scheduling of a consular interview was not ripe because USCIS had not yet completed the prior step of approving the waiver application); Baaghil v. Miller, 1 F.4th 427, 435 (6th Cir. 2021) (concluding claim of Due Process violation for the denial of immigration petition without proper process was not ripe because the agency had not yet ruled on the petition). The Court will therefore dismiss Count IV for a lack of subject matter jurisdiction.

## II. Merits Arguments

### A. Reasonableness of Delay

To state a claim for an unreasonable delay of agency action under the APA, plaintiffs must demonstrate first that an agency "failed to take a discrete agency action that it is required to take, and second, that the delay was unreasonable." Da Costa, 80 F.4th at 340 (cleaned up).

The government first contends that "[t]he law provides no clear duty to adjudicate any specific visa application." Mot. at 8. Because this Court ultimately holds that plaintiffs fail to allege an unreasonable delay as a matter of law, the Court will assume without deciding that the State Department has a non-discretionary, discrete duty to adjudicate plaintiffs' visa applications. See, e.g., Baygan, 2024 WL 3723714, at *5 (taking similar approach).

"The APA imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it within a reasonable time." Meyou v. U.S. Dep't of State, Civ. A. No. 21-2806 (JDB), 2022 WL 1556344, at *3 (D.D.C. May 17, 2022) (cleaned up). If the

12

agency action is "unreasonably delayed," the APA authorizes the reviewing court to compel the agency's delayed action. See id. (citing 5 U.S.C. § 706(1)).[10]

The government argues that plaintiffs' claim also fails at this step, because plaintiffs fail to assert a plausible claim of unreasonable delay as a matter of law.[11]  Mot. at 16.  "The central question in unreasonable-delay cases is 'whether the agency's delay is so egregious as to warrant mandamus.'"  Baygan, 2024 WL 3723714, at *6 (quoting TRAC, 750 F.2d at 79).  In this circuit, the Court's analysis into the reasonableness of a delay is guided by the six non-exclusive TRAC factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

TRAC, 750 F.2d at 80 (cleaned up).

Factors 1 and 2: "Factors one and two are related, and courts often consider them together." Meyou, 2022 WL 1556344, at *3 (collecting cases).  This combined analysis asks "whether a rule of reason governs the agency response time and whether Congress, by statute, indicated an expected timetable for the response time."  Baygan, 2024 WL 3723714, at *6.

---

[10] "The standard for undue delay under the Mandamus Act . . . is identical to the APA standard."  Meyou, 2022 WL 1556344, at *3 (quoting Kangarloo v. Pompeo, 480 F. Supp. 3d 134, 142 (D.D.C. 2020)).

[11] Counts III and IV of the complaint together advance substantially the same claim of unreasonable delay in the processing of plaintiffs' visa petitions and applications but seek different forms of mandamus relief: the acceptance and processing of plaintiffs' visa applications in Count III and the adjudication of those applications in Count IV. Although the Court will determine that Count IV is not ripe because the claim frames the alleged unreasonable delay in terms of the adjudication of plaintiffs' applications, the Court still considers the substance of the broader unreasonable delay claims advanced in both Counts III and IV.

The government contends that there is neither an articulated rule of reason nor a firm congressional timetable for consular officials to adjudicate reapproved visa petitions. See Mot. at 18–19. Plaintiffs disagree. They claim that the government has a policy to adjudicate applications "in the order they were filed" and failed to follow that rule for plaintiffs' applications. See Compl. ¶¶ 80–81.

The Court has often recognized that "processing visas takes a baseline amount of time." Baygan, 2024 WL 3723714, at *6 (internal quotation marks omitted). As such, "Congress did not provide a statutory deadline to complete processing or adjudication of visa applications" but has "given the agencies wide discretion in the area of immigration processing." Meyou, 2022 WL 1556344, at *3 (internal quotation marks omitted). Without a statutory deadline, judges in this District routinely use "case law as a guide" to determine whether plaintiffs have plausibly alleged an unreasonable delay. See id.; Baygan, 2024 WL 3723714, at *6. Although courts have not established a bright-line rule, "district courts have generally found that immigration delays in excess of five, six, or seven years are unreasonable, while those between three to five years are often not unreasonable." Baygan, 2024 WL 3723714, at *6 (cleaned up); see Meyou, 2022 WL 1556344, at *3.

Plaintiffs argue that the clock to measure a State Department visa adjudication delay begins when the State Department first receives an approved petition from USCIS, which in plaintiffs' cases occurred in March 2017, May 2017, and July 2017, respectively. See Compl. ¶¶ 17, 24, 31; Opp'n at 11. Under plaintiffs' theory, the State Department has delayed adjudication of their petitions for more than seven years. The government, on the other hand, argues that courts measure the delay in agency action from the last government action, which in plaintiffs' cases occurred when the State Department received the reapproved petitions from USCIS in October

2023 and November 2023.  See Mot. at 12–13; Reply at 7.  Under the government's theory, plaintiffs' petitions have been pending for approximately one year.

The Court agrees with the government's view of the D.C. Circuit's case law.  To assess the length of a delay, courts "seem to focus on the delay from the last Government action to the issuance of the opinion."  Meyou, 2022 WL 1556344, at *3 (cleaned up) (quoting Mahmood v. U.S. Dep't Homeland Sec., Civ. A. No. 21-1262 (RC), 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021)).  There is no disagreement that the last government actions occurred in October 2023 and November of 2023.  See Opp'n at 7.  Assuming, as the Court must at the motion to dismiss stage, that any delay after that time is the exclusive fault of the State Department, the delays at present are ten and eleven months, respectively.  These delays are well within the length of delay that courts routinely find reasonable.  See, e.g., Tekle v. Blinken, Civ. A. No. 21-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) (collecting cases concluding that two- to three-year delays are reasonable).

This method of measurement also makes sense.  Plaintiffs have not alleged any action that the State Department could have taken on the petitions once the State Department returned them to USCIS for reapproval, nor do plaintiffs offer any facts that would support the inference that the State Department inappropriately utilized 22 C.F.R. § 42.43(a) in these cases; rather, plaintiffs seem to argue facially that any utilization of the regulation is inappropriate.  Cf. Compl. ¶¶ 63–64 (claiming in a conclusory fashion that State Department officials "are relying on [22 C.F.R. § 42.43(a)] to evade their statutory duty" by merely alleging that State Department officials utilized the regulation).  Hence, there is no factual basis to support attributing to the State Department the approximately six years that plaintiffs' visa petitions sat pending with a different federal agency.

On the second factor, plaintiffs contend that it is "the sense of Congress" that visa applications should be adjudicated "no later than 180 days after the initial filing of the application." See id. ¶ 76 (citing 8 U.S.C. § 1571(b)). It is true that lawmakers expressed the sentiment that agencies should complete visa adjudications in 180 days. See Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, Title II, § 202, Oct. 17, 2000, 114 Stat. 1262, 1262 (codified at 8 U.S.C. § 1571(b)). Although the D.C. Circuit observed that this "aspirational statement . . . somewhat favors plaintiffs who have waited longer than 180 days for an immigration benefit," Da Costa, 80 F.4th at 344, "the D.C. Circuit has concluded [that it] does not fundamentally change the analysis," Baygan, 2024 WL 3723714, at *7. Factors one and two, therefore, favor dismissal.

Factor four: The Court turns next to the fourth TRAC factor, which also heavily favors the government. This factor considers "the effect of expediting delayed action on agency activities of a higher or competing priority." Da Costa, 80 F.4th at 343 (quoting TRAC, 750 F.2d at 80). Plaintiffs unconvincingly posit that there are no competing effects on the State Department. See Compl. ¶¶ 50, 89; Opp'n at 16. Plaintiffs boldly proclaim that because their complaint neither "identif[ies] any agency activities of a higher or competing priority" nor "plead[s] that there even is a queue of matters before the consular Defendants," see Opp'n at 16, this Court cannot consider the effect of a mandamus order on other visa applicants, see id. at 15–16. This self-serving argument does not withstand scrutiny.

To begin, plaintiffs cannot seriously contend without evidence that each plaintiff is the first visa applicant in line at their respective consulate. This argument also plainly ignores the plethora of case law in this circuit in which judges routinely conclude that a judicial order putting one party "at the head of the queue simply moves all others back one space and produces no net gain." Da Costa, 80 F.4th at 343. Plaintiffs also ignore the repeated statements by judges in this District

16

that it is highly important whether judicial interference with an established order would create "line-jumping and ultimately delay[] the final adjudication of the applications that were skipped." Meyou, 2022 WL 1556344, at *4 (collecting cases). Here, granting plaintiffs' relief would push their petitions and applications to the front of the queue and create these same line-jumping concerns that judges in this District repeatedly admonish. The fourth factor, therefore, favors dismissal.

Factors three and five: The third and fifth TRAC factors weigh very slightly in plaintiffs' favor. Courts evaluate the individualized harm that the agency's delay has caused a plaintiff. See, e.g., Baygan, 2024 WL 3723714, at *8. Factor three considers whether "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." Da Costa, 80 F.4th at 344 (quoting TRAC, 957 F.2d at 80)). Factor five more broadly considers "the nature and extent of the interests prejudiced by delay." Id.

Although these are the factors that traditionally favor plaintiffs, they are given short shrift in the complaint. To start, the complaint only posits harms to four of the nine plaintiffs—plaintiff Rigi's children, who are derivative beneficiaries of Rigi's Form I-140 petition, and plaintiffs Rigi and Cheng. See Compl. ¶¶ 51–52.[12] Plaintiffs proffer no harm as to Cheng's husband, Rigi's third derivative beneficiary, or Seirafitehranian and her derivative beneficiaries. Next, plaintiffs seem to allege emotional harms caused by the delay in some of their children's "opportunity to become assimilated to the culture, norms and language of their new home in the United States." Id. ¶ 52. These allegations are fairly conclusory. See id. ¶¶ 51–54. Indeed, that is a "harm" that every plaintiff in these visa cases could assert. Hence, these two factors weigh only slightly in plaintiffs' favor. See Tahavori, 2024 WL 1328546, at *5 (reaching a similar conclusion).

---

[12] The complaint also proffers harms to Cheng's daughter, who is not a plaintiff. See Compl. ¶ 51.

17

Factor six: Finally, the sixth TRAC factor requires courts to consider agency impropriety but instructs that they "need not find bad faith on the part of the agency to determine unreasonable delay exists." Baygan, 2024 WL 3723714, at *8. When plaintiffs do not allege that defendants have acted in bad faith, this factor is neutral. See, e.g., id.; see also Compl. ¶ 91 (agreeing that the sixth factor is neutral).

The Court concludes that plaintiffs have failed to plausibly state a claim of unreasonable delay at this time. The first and fourth factors, which carry the greatest weight, see, e.g., Baygan, 2024 WL 3723714, at *6 (citing Da Costa, 80 F.4th at 340), strongly favor dismissal. Factor two also favors dismissal. Factors three and five weigh only slightly in plaintiffs' favor, and factor six is neutral. The factors considered together, therefore, strongly favor dismissal. The Court will therefore dismiss Count III for failure to state a claim.

### B. Lawfulness of 22 CFR § 42.43(a)

Plaintiffs finally ask the Court to hold unlawful and set aside 22 C.F.R. § 42.43(a),[13] a federal regulation utilized by the State Department in this case. See Compl. ¶¶ 61–65. The regulation states:

> The consular officer shall suspend action in a petition case and return the petition, with a report of the facts, for reconsideration by DHS if the petitioner requests suspension of action, or if the officer knows or has reason to believe that approval of the petition was obtained by fraud, misrepresentation, or other unlawful means, or that the beneficiary is not entitled, for some other reason, to the status approved.

22 C.F.R. § 42.43(a).

Plaintiffs contend that this regulation is "otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), to the extent that it "purports to relieve consular officers from their statutory duty to adjudicate immigrant visa petitions," Compl. ¶ 64; see 8 U.S.C. § 1202(b) ("All immigrant visa

---

[13] At multiple points in the complaint and opposition, plaintiffs incorrectly cite to this regulation as "20 C.F.R. § 42.43(a)." See Compl. ¶¶ 61–64; Opp'n at 7. Chapter 20 of the Code of Federal Regulations does not contain a section 42.43(a).

applications shall be reviewed and adjudicated by a consular officer."). This argument readily fails, however, because nothing in the challenged regulation permits consular officers to decline to review or adjudicate a visa. Instead, the regulation requires a consular officer to "suspend" action on a visa petition in a prescribed set of circumstances, such as if the officer "knows or has reason to believe that approval of the petition was obtained by fraud, misrepresentation, or other unlawful means." See 22 C.F.R. § 43.42(a) (emphasis added). Moreover, the regulation does not permit the officer to merely suspend the action without further action. Instead, the consular officer must suspend the action "and return the petition, with a report of the facts, for reconsideration by DHS." Id. (emphasis added). Then, if and when USCIS reapproves the petition, USCIS returns the petition to the State Department for renewed review and adjudication.

Because plaintiffs have failed to provide any evidence whatsoever—let alone state a plausible claim—that 22 C.F.R. § 42.43(a) permits State Department officers to avoid adjudicating visa petitions altogether, the Court will dismiss Count II for failure to state a claim.[14]

## Conclusion

For the foregoing reasons, the Court will grant defendants' motion to dismiss and dismiss this case. A separate Order consistent with this Memorandum Opinion will issue on this date.

/s/<br>
JOHN D. BATES<br>
United States District Judge

Dated: September 30, 2024

---

[14] The complaint erroneously numbers this as Count III. See Compl. at 13.